IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| DEBORAH CHAMPLUVIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-cv-2072-JPM-tmp |
| | ) | |
| DR. GARY D. SIMPSON, DDS, | ) | |
| D/B/A MIDSOUTH DENTAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Before the court is *pro se* plaintiff Deborah Champluvier's "Objection to Defendant's Notice of Removal," which the undersigned construes as a motion to remand, and a motion for judgment on the pleadings filed by defendant Dr. Gary D. Simpson, DDS, D/B/A Midsouth Dental Center.[1] (ECF Nos. 10-12.) For the reasons below, it is recommended that the motion to remand be granted and that the motion for judgment on the pleadings be denied as moot and without prejudice. In the alternative, should the court find that remand is not warranted, the undersigned recommends that the motion for judgment on the pleadings be granted.

I.   PROPOSED FINDINGS OF FACT

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

On January 27, 2020, *pro se* plaintiff Deborah Champluvier went to see Dr. Gary D. Simpson, DDS, D/B/A Midsouth Dental Center ("Simpson") in Memphis, Tennessee, for a dental appointment. (ECF No. 1-2 at 3.) Champluvier scheduled the appointment because she had been suffering from severe tooth pain. (ECF No. 1-2 at 3.) During the appointment, Simpson took an x-ray and examined the left side of Champluvier's mouth, where the pain was coming from. (ECF No. 1-2 at 3-4.) Following the examination, Simpson concluded that he needed to extract a tooth. (ECF No. 1-2 at 4.) After pulling the tooth, Champluvier's mouth began to bleed. (ECF No. 1-2 at 4.) According to Champluvier, she was in so much pain that she began to cry. (ECF No. 1-2 at 4.) Simpson sent Champluvier home without explaining why her mouth was bleeding or why she was in pain. (ECF No. 1-2 at 4.)

Champluvier returned to Simpson's office the next day because she was still in pain. (ECF No. 1-2 at 4.) According to Champluvier, Simpson told her that there was nothing he could do and "screamed" at her to leave his office. (ECF No. 1-2 at 4.) On January 29, 2020, Champluvier tried calling Simpson's office to ask for help with managing the pain. (ECF No. 1-2 at 4.) She spoke with a member of Simpson's staff, who told her to come in the following day, which she did. (ECF No. 1-2 at 4.) During her appointment on January 30, 2020, Simpson told Champluvier that she likely had a dry socket. (ECF No. 1-2 at 4.) When Simpson asked

her to open her mouth so that he could inspect the tooth, Champluvier was unable to do so because her mouth was swollen. (ECF No. 1-2 at 4.) Simpson again sent Champluvier home, telling her that there was nothing he could do if she could not open her mouth. (ECF No. 1-2 at 4-5.)

That night, Champluvier's brother took her to Baptist Memorial Hospital Desoto in Southaven, Mississippi. (ECF No. 1-2 at 5.) According to Champluvier, the pain in her mouth had reached a "10 plus" and her mouth had swollen to the point where she was unable to chew. (ECF No. 1-2 at 5.) Dr. Cameron Walton performed a computerized tomography scan on the left side of Champluvier's mouth, which revealed that she was suffering from an abscess infection. (ECF No. 1-2 at 5.) Dr. Walton informed Champluvier that the hospital did not have the resources to treat her and transferred her to Regional One Hospital in Memphis, Tennessee. (ECF No. 1-2 at 5.) After being taken by ambulance to Regional One Hospital, doctors performed emergency surgery consisting of an incision and drainage of the left pterygomandibular abscess. (ECF No. 1-2 at 6.) Champluvier remained in the hospital for five days after the surgery. (ECF No. 1-2 at 6.) According to Champluvier, the holes where the doctors had inserted tubes during the surgery continued to drain for the next two weeks. (ECF No. 1-2 at 6.) Since the surgery, she continues to suffer from pain in her neck,

chin, ear, lip, and head, and parts of her face remain numb. (ECF No. 1-2 at 6.)

On January 4, 2021, Champluvier sent Simpson a letter titled "Notice of Claim," setting forth the narrative described above. (ECF Nos. 1-2 at 11-13.) On January 26, 2021, Champluvier filed the instant action in the Circuit Court for Shelby County, Tennessee. (ECF No. 1-2 at 10.) In the complaint, Champluvier alleges that Simpson was negligent because he did not recognize that her tooth was abscessed from the x-rays and that, instead of pulling the tooth during the initial appointment, he "should have given [her] antibiotics and sent [her] home and rescheduled her an appointment to come back and make sure the abscess was gone before he pulled [her] tooth." (ECF No. 1-2 at 7.) She also alleges that he was negligent by not adhering to his internal policy that a patient be examined prior to extraction of any teeth to determine if there may be any "abnormalities or difficulties," such as an abscess. (ECF No. 1-2 at 8.)

On January 28, 2021, Simpson was served with the complaint in state court. (ECF No. 1 at 1.) Simpson filed a Notice of Removal with this court on February 3, 2021, and an answer to the complaint on February 12, 2021. (ECF Nos. 1; 8.) On February 23, 2021, Simpson filed a motion for judgment on the pleadings and an accompanying memorandum. (ECF Nos. 10-11.) In his motion, Simpson argues that Champluvier's complaint must be dismissed because she

did not comply with the sixty-day notice requirement of the Tennessee Healthcare Liability Act ("THLA") and that she failed to file a certificate of good faith with her complaint, as required by Tennessee law. (ECF Nos. 10; 11 at 3.) Champluvier responded to the motion for judgment on the pleadings on March 10, 2021, arguing that the THLA's certificate of good faith requirement does not apply to the instant lawsuit because of the common knowledge exception. (ECF No. 22.) On March 26, 2021, Simpson filed a reply disputing that the common knowledge exception applies and arguing that, regardless, Champluvier did not comply with the sixty-day waiting period requirement. (ECF No. 25.)

In the meantime, on February 25, 2021, Champluvier filed a document titled, "Plaintiff's Objection to Defendant's Notice of Removal to the United States District Court for the Western District of Tennessee at Memphis from the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis." (ECF No. 12.) In her filing, Champluvier argues that her case does not present a federal question and that diversity jurisdiction does not exist because "[j]urisdiction in this case is in the Circuit Court of Tennessee [f]or [t]he Thirtieth Judicial District at Memphis as everything in plaintiff's complaint took place in Memphis, Tennessee." (ECF No. 12 at 2.) Simpson responded on March 5, 2021, conceding that this court lacks federal question

jurisdiction but arguing instead that removal is proper because diversity jurisdiction exists. (ECF No. 16 at 1-2.)

## II. PROPOSED CONCLUSIONS OF LAW

**A.  Motion to Remand**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States[.]" 28 U.S.C. § 1441. "Ordinarily, a defendant may remove a state court case to federal court only if it could have been brought there in the first place; that is, if the federal court would have original jurisdiction over the case." Strong v. Telectronics Pacing Sys., Inc., 78 F.3d 256, 259 (6th Cir. 1996). In removing an action to federal court, "[t]he party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." Shupe v. Asplundh Tree Expert Co., 566 F. App'x 476, 478 (6th Cir. 2014) (quoting Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006)).

In his Notice of Removal, Simpson relies on diversity of citizenship under 28 U.S.C. § 1332 as the basis for this court's jurisdiction. (ECF No. 1-1.) According to § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." A federal court has jurisdiction under § 1332

only if there is "complete diversity between all plaintiffs and all defendants." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (internal citations omitted). Additionally, "[i]n the Sixth Circuit, it is generally agreed that the amount [in] controversy is determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" Fed. Nat'l Mortg. Ass'n v. Jaa, No. 14-2065-STA-dkv, 2014 WL 1910898, at *5 (W.D. Tenn. May 13, 2014) (quoting Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376–77 (6th Cir. 2007)).

Based on the record before the court, it appears that Champluvier is a citizen of Mississippi and Simpson is a citizen of Tennessee.[2] Therefore, the undersigned submits that complete diversity exists. Further, Champluvier alleges in her complaint that her estimated damages – including medical bills, pain and suffering, and punitive damages – total $1,559,754.62, a sum that is well in excess of the statutory requirement. Therefore, the elements of diversity jurisdiction are met in this case.

However, 28 U.S.C. § 1441(b)(2) (known as the forum-defendant rule) establishes that "[a] civil action otherwise removable

---

[2]Champluvier signed each of her filings with a Southaven, Mississippi address. (ECF Nos. 1-2 at 9–10; 12 at 6; 22 at 5). As for Simpson, both parties state in their filings that his address is 1707 Bender Road, Memphis, Tennessee. (ECF Nos. 1 at 2; 1-2 at 3, 10; 12 at 2–6; 16 at 1.) Simpson's Notice of Removal alleges that he is a resident of Tennessee while Champluvier is a resident of Mississippi. (ECF No. 1-1.)

solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Because Champluvier initially filed this action in Tennessee state court, removal on the basis of diversity jurisdiction would be barred if Simpson is a citizen of Tennessee. See Athena of SC, LLC. v. Macri, No. 3:15-cv-41, 2015 WL 11108894, at *1 (E.D. Tenn. Aug. 20, 2015) ("[E]ven if there is complete diversity among the parties, the presence of a properly joined and served resident defendant bars removal.") (quoting Gilbert v. Choo-Choo Partners II, LLC, No. 1:05-CV-99, 2005 WL 1719907, at *1 (E.D. Tenn. July 22, 2005)); Fed. Nat'l Mortg. Ass'n v. Rummo, No. 13-2702-STA-tmp, 2013 WL 6843083, at *2 (W.D. Tenn. Dec. 27, 2013) ("Rummo is a citizen of Tennessee . . . and thus removal is also barred under 28 U.S.C. § 1441(b)(2)"). Because the forum-defendant rule is considered non-jurisdictional and thus may be waived, it must be timely raised by a plaintiff in a motion to remand. Southwell v. Summit View of Farragut, LLC, 494 F. App'x 508, 511 n.2 (6th Cir. 2012) (citing Plastic Moldings Corp. v. Park Sherman Co., 606 F.2d 117, 119 n.1 (6th Cir. 1979) and RFF Family P'ship, LP v. Wasserman, 316 F. App'x 410, 411-12 (6th Cir. 2009)).

In her motion to remand, Champluvier argues that there is no diversity jurisdiction because "everything in plaintiff's

complaint took place in Memphis, Tennessee" and that "[t]he State of Tennessee has complete Jurisdiction of this case." (ECF No. 12 at 2.) Later in her motion, she argues that jurisdiction in Tennessee state court is proper because Simpson is a resident of Tennessee. (ECF No. 12 at 4.) While this argument does not explicitly reference the forum-defendant rule, given Champluvier's *pro se* status, the undersigned finds that her motion sufficiently raises the forum-defendant rule.

In Simpson's Notice of Removal, he states that his county of residence is Shelby County, Tennessee, and checked a box indicating that he is a citizen of Tennessee. (ECF No. 1-1.) Both Simpson and Champluvier filed documents stating that Simpson's principle place of business is located at 1707 Bender Road, Memphis, Tennessee. (ECF Nos. 1 at 2; 1-2 at 3, 10; 12 at 2-6; 16 at 1.) Further, along with not checking the box for federal question in his Notice of Removal civil cover sheet, Simpson concedes that federal question jurisdiction does not exist in his response to Champluvier's motion. (ECF Nos. 1-1; 16 at 1-2.) As Simpson removed this case to federal court "solely on the basis of the jurisdiction under section 1332(a)" and he is a citizen of the state where the suit was initially brought, the undersigned submits that the motion to remand should be granted.

B.  **Motion for Judgment on the Pleadings**

- 9 -

Because the undersigned recommends remanding this case to state court, it is further recommended that Simpson's motion for judgment on the pleadings be denied as moot and without prejudice. However, in the event that the court finds that remand is not warranted, in the interest of judicial efficiency, the undersigned will address the merits of Simpson's motion below.

1. Standard of Review

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Rose v. Cent. USA Wireless, LLC, No. 17-cv-2673-SHM-tmp, 2018 WL 2656767, at *3 (W.D. Tenn. June 4, 2018) (citing Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009)). "When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir. 2006) (quoting Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). "To survive a Rule 12(c) motion, the 'complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Engler v. Arnold, 862 F.3d 571, 575 (6th Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A motion for judgment on the pleadings "should be granted when there is no material issue of fact and the moving party is entitled to judgment as a matter of law." Guy v. Spader Freight Servs., No. 17-2038, 2017 WL 6939377, at *2 (6th Cir. Oct. 18, 2017).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011). Even so, *pro se* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

### 2. Sixty Day Notice Requirement Under Tenn. Code Ann. § 29-26-121

Simpson's first argument for dismissal is that Champluvier did not abide by the THLA's mandated sixty-day waiting period before filing her complaint.[3] Champluvier does not address this

---

[3]Although Champluvier's complaint alleges only common law negligence and *res ipsa loquitur*, the procedural requirements of Tenn. Code Ann. § 29-26-121 apply to all "alleged acts that bear

argument in her response to Simpson's motion. Under Tennessee law, "[a]ny person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Tenn. Code Ann. § 29-26-121(a)(1). Although "[c]ourts will forgive '[n]on-substantive errors and omissions'" in the contents of the pre-suit notice, "the requirement of pre-suit notice itself is still 'fundamental,' 'mandatory,' and 'not subject to satisfaction by substantial compliance.'" Estate of Barnwell v.

---

a substantial relationship to the rendition of medical treatment by a medical professional or concern medical art or science, training, or expertise." Mayo v. United States, 785 F. Supp. 2d 692, 696 (M.D. Tenn. 2011); see also Tenn. Code Ann. § 29-26-101(a)(1) ("'Health care liability action' means any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based."). Tennessee law defines a health care provider as "[a] health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one of the accredited medical schools or of one of such medical school's affiliated teaching hospitals in Tennessee." Tenn. Code Ann. § 29-26-101(a)(2)(A); see also Tenn. Code Ann. §§ 63-5-101, *et seq.* (regulating the practice of dentistry). Champluvier's claims for negligence and *res ipsa loquitur* by Simpson, a health care provider, are governed by Tenn. Code Ann. § 29-26-121. See generally Wenzler v. Xiao Yu, No. W2018-00369-COA-R3-CV, 2018 WL 6077847 (Tenn. Ct. App. Nov. 20, 2018) (applying the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121 to a dentist).

Grigsby, 801 F. App'x 354, 362 (6th Cir. 2020) (quoting Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 519 (Tenn. 2014) and Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 555–56 (Tenn. 2013)); see also Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 309-10 (Tenn. 2012) (holding that the inclusion of the word "shall" in the statute implies that "[t]he requirements of pre-suit notice of a potential claim . . . are fundamental to the validity of the . . . statute[] and dictate that we construe such requirements as mandatory"). Failing to comply with the pre-suit notice requirements means that a "plaintiff has failed to state a claim for medical malpractice for which relief can be granted." Conrad v. Washington Cty., No. 2:11-CV-106, 2012 WL 554462, at *2 (E.D. Tenn. Feb. 21, 2012).

It is undisputed that Champluvier sent a letter titled "Notice of Claim" to Simpson on January 4, 2021, and that she filed her complaint in state court on January 26, 2021. As such, Champluvier did not wait the necessary sixty days before filing this lawsuit in contravention of the notice requirements of Tenn. Code Ann. § 29-26-121(a)(1). Because the notice requirements are mandatory, the undersigned submits that this would be a basis for granting Simpson's motion for judgment on the pleadings and dismissing the complaint without prejudice. See Estate of Barnwell, 801 F. App'x at 361 (applying Tennessee law and holding that "failure to comply

with [the medical malpractice pre-suit notice] requirement ordinarily results in dismissal without prejudice"); Foster v. Chiles, 467 S.W.3d 911, 916 (Tenn. 2015) ("[W]e hold that dismissal without prejudice is the proper sanction for noncompliance with Tenn. Code Ann. § 29-26-121(a)(1).").

### 3. Certificate of Good Faith Requirement Under Tenn. Code Ann. § 29-26-122

Additionally, Simpson argues that dismissal with prejudice is warranted because Champluvier did not include a certificate of good faith with her pre-suit notice in accordance with Tenn. Code Ann. § 29-26-122. Pursuant to Tenn. Code Ann. § 29-26-122(a),

> [i]n any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause.

Subsection (c) dictates that failing to comply with the certificate of good faith requirement mandates dismissal with prejudice. Tenn. Code Ann. § 29-26-122(c); see also Foster, 467 S.W.3d at 916 ("[Section] 29-26-122 expressly require[s] a dismissal with prejudice for a plaintiff's failure to file a certificate of good faith."). Champluvier does not argue that her failure to file a certificate of good faith is due to a failure by Simpson to provide copies of medical records or any "extraordinary cause." Rather,

- 14 -

she contends that a certificate of good faith is not required in this case because, under the common knowledge doctrine, expert testimony is not necessary to prove her claims.

The general rule in Tennessee is that "the negligence of the defendant physician usually must be proved by expert testimony." See Mayo, 85 F. Supp. 2d at 696 (citing Chambliss v. Stohler, 124 S.W.3d 116, 119 (Tenn. Ct. App. 2003)). This is because "most medical claims involve complicated and technical information which is beyond the general knowledge of a lay jury." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 92 (Tenn. 1999); see also Tolliver v. Tellico Vill. Prop. Owners Assoc., Inc., 579 S.W.3d 8, 22 (Tenn. Ct. App. 2019). However, Tennessee courts have "long recognized the common knowledge exception in health care liability cases." Jackson v. Burrell, 602 S.W.3d 340, 348 (Tenn. 2020); see Ellithorpe v. Weismark, 479 S.W.3d 818, 829 (Tenn. 2015) ("In health care liability actions . . . expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the 'common knowledge' exception."). Under this exception, a plaintiff need not file a certificate of good faith if "the act of alleged wrongful conduct lies within the common knowledge of a layperson." Osunde v. Delta Med. Ctr., 505 S.W.3d 875, 887 (Tenn. Ct. App. 2016) (citing Baldwin v. Knight, 569 S.W.2d 450, 456 (Tenn. 1978); Bowman v. Henard, 547 S.W.2d 527, 530–31 (Tenn. 1977); and Tucker

v. Metro. Gov't of Nashville & Davidson Cty., 686 S.W.2d 87, 92 (Tenn. Ct. App. 1984)). As the Court of Appeals of Tennessee has aptly described, "[t]he common knowledge exception applies to cases in which the medical negligence is as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence." Graniger v. Methodist Hosp. Healthcare Sys., Inc., No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994) (quoting Murphy v. Schwartz, 739 S.W.2d 777, 778 (Tenn. Ct. App. 1986)).

The exception is typically limited to situations where the alleged negligence is "obvious and readily understandable" by the average person, Estate of Bradley v. Hamilton Cty., No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *5 (Tenn. Ct. App. Aug. 21, 2015), with the "classic example" being "where a sponge is left in the patient's body following surgery or where the patient's eye is cut during an admission for an appendectomy." McConkey v. State, 128 S.W.3d 656, 660 (Tenn. Ct. App. 2003) (citing; compare Osunde, 505 S.W.3d at 886 (common knowledge exception applied to plaintiff's claim that a technician was negligent by providing a faulty and uneven stool); Jackson, 602 S.W.3d at 350 (common knowledge exception applied to plaintiff's claim that she was sexually assaulted during a massage); and Zink v. Rural/Metro of Tenn., L.P., 531 S.W.3d 698, 707 (Tenn. Ct. App. 2017) ("[I]t would be within the common knowledge of a layperson whether an EMT's

alleged negligent, reckless, or intentional striking of a patient's face while the patient is strapped to a gurney would fall below the standard of care.") with Mayo, 785 F. Supp. 2d at 696–97 (expert testimony necessary where plaintiff claimed that he was exposed to another person's waste, blood, or bodily fluids during a colonoscopy and thereafter was exposed to hepatitis); and McConkey, 128 S.W.3d at 661 (expert testimony necessary because "[n]either [the] Court nor the average layperson knows whether accidentally severing a vein during a vasectomy is an injury which ordinarily does not occur in the absence of negligence").

The undersigned submits that the common knowledge doctrine does not apply in this case. Champluvier's allegations of negligence are, in essence, that Simpson should have known her tooth was abscessed after reviewing her x-rays and that, instead of pulling her tooth, he should have prescribed her antibiotics so that she could properly heal before the extraction. This is not a situation where a sponge or needle was left in a patient following surgery. See Seavers, 9 S.W.3d at 91; McConkey, 128 S.W.3d at 660. Rather, determining whether Simpson should have realized that Champluvier's tooth was abscessed from the x-ray examination and the appropriate course of treatment requires "specialized medical knowledge . . . to establish negligence in [this] health care liability action." Jackson, 602 S.W.3d at 349. Dental extractions are not so commonplace that the fact finder should be predisposed

to know "that [the] events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." Seavers, 9 S.W.3d at 91; see McConkey, 128 S.W.3d at 661 ("It may be that Defendant could have performed the vasectomy with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice and still have accidentally severed the vein. The problem for Plaintiff is that this is knowledge that a layperson, including the Commission and this Court, simply does not possess."). Because the common knowledge exception does not apply, compliance with the strict requirements of Tenn. Code Ann. § 29-26-115(a) is required. See Ellithorpe, 479 S.W.3d at 829 (. Since Champluvier did not file a certificate of good faith as mandated by Tenn. Code Ann. § 29-26-115(a), the undersigned recommends that, should the court reach Simpson's motion, the motion for judgment on the pleadings be granted and the complaint dismissed with prejudice on these grounds.

### III. RECOMMENDATIONS

For the reasons above, it is recommended that Champluvier's motion to remand be granted and that Simpson's motion for judgment on the pleadings be denied as moot and without prejudice. In the alternative, should the court find that remand is not warranted, the undersigned recommends that the motion for judgment on the pleadings be granted and the complaint dismissed with prejudice.

Respectfully submitted,

- 18 -

```
s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 30, 2021
Date
```

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**